UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROUBEN J.,
               Plaintiff,
     v.

FRANK J. BISIGNANO, et al.,[1]
               Defendants.

Case No. 25-cv-02343-SI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**
Re: Dkt. Nos. 10, 12

The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 10, 12. Having considered the parties' papers and the Administrative Record ("AR"), the Court GRANTS IN PART plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this action for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

### I. Administrative Proceedings

On July 8, 2021, plaintiff Rouben J. protectively filed an application for Social Security Disability Income ("SSDI") under Title II of the Social Security Act. AR 17. Plaintiff alleged disability beginning November 20, 2018.[2] *Id.* at 347. His application was denied initially and upon reconsideration. *Id.* at 17. Plaintiff then filed a written request for a hearing, which took place by

---

[1] In the case caption, the Court substitutes Frank J. Bisignano, who is the current Commissioner of Social Security, for his predecessor, Leland Dudek. *See* Fed. R. Civ. P. 25(d).

[2] The Administrative Law Judge incorrectly recorded the date as November 18, 2018. *See* AR 17.

telephone on February 6, 2024. *Id.* Plaintiff was represented by counsel at the hearing. *Id.* Plaintiff testified as did vocational expert Stephen P. Davis. *Id.* On February 28, 2024, Administrative Law Judge ("ALJ") Mary Ann Poulose issued a partially unfavorable decision, finding plaintiff has been disabled within the meaning of the Social Security Act beginning on February 22, 2023. *Id*. at 33. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. *Id*. at 1-4.

Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g). Dkt. No. 1. Plaintiff challenges the denial of his request for disability benefits for the period between his alleged onset date of November 20, 2018, and February 21, 2023, the day prior to the ALJ's finding that he was disabled. Dkt. No. 10 ("Pl.'s Mot.") at 2.

## II.    Medical and Personal History

On February 6, 2024, the date of the administrative hearing, plaintiff was a fifty-five-year-old male with a high school education. AR 44, 46. Plaintiff had past work as a limousine driver and cleaner. *Id.* at 47-49. In his disability report, plaintiff alleged disability based on "a combination of impairments including residual impairment from an ischemic stroke, a seizure disorder, central vein occlusion, obesity, anxiety disorder, and an adjustment disorder." Pl.'s Mot. at 5; AR 440.

In September 2017, plaintiff had a stroke which began a series of doctor's visits over the years. AR 538. Plaintiff regularly visited the medical center operated by Kaiser Permanente to treat his recurrent seizures. Plaintiff primarily saw Dr. Yana Kriseman.

On August 6, 2018, ophthalmologist Dr. Candice Moy evaluated plaintiff. *Id.* at 1227. Dr. Moy noted plaintiff's history of stroke and his complaint of poor vision. *Id.* at 1227-28. Dr. Moy assessed that plaintiff had limited visual potential due to central vein occlusion. *Id.* at 1229. On August 13, 2018, Dr. Chae also noted that plaintiff's eyesight is limited by a macular scar and retinal atrophy. *Id.* at 1226.

On January 17, 2019, optometrist Dr. Alvin Chua measured plaintiff's eyesight finding 20/200 in the right eye and 20/25 in the left. *Id.* at 1178. He prescribed plaintiff glasses. *Id.*

In July 2019, Dr. Yana Kriseman placed plaintiff off work for sixteen days due to simple partial epilepsy and a strong suspicion of seizures. *Id.* at 529, 531. Later in July, Dr. Amina conducted a physical examination and noted that plaintiff had coordination and his gait was normal and steady. *Id.* at 665. She opined that plaintiff's ongoing seizure episodes were concerning for focal seizures caused by plaintiff's previous stroke. *Id.* Plaintiff's symptoms continued through 2019, including recurrent symptoms of numbness/weakness on the left side and headaches. *Id.* at 545-46. Dr. Kriseman opined that the symptoms could be residual sensory symptoms from his previous stroke. *Id.* at 546.

In September 2019, plaintiff was evaluated by psychiatrist Dr. Hindi. *Id.* at 1356. The doctor noted that plaintiff was overall improving with psychotherapy and noted his "stability of identity, cognition and perception" and his "[s]table capacity for mental focus and concentration." *Id.* at 1356-57. However, she did note his overall "distressed and unstable mood." *Id.* at 1357. In October, plaintiff expressed to his mental health provider, Dr. Plumper, that he was growing frustrated with all the different appointments and medication despite no improvement in his condition. *Id.* at 607. He expressed that he occasionally had some suicidal thoughts. *Id.*

Due to plaintiff's medications and symptoms, in October 2019, Dr. Jie Ni, M.D. at Kaiser limited plaintiff to carrying no more than fifty pounds and recommended he avoid working at night due to his vision. *Id.* at 532. On November 13, 2019, plaintiff was evaluated by Dr. Durairaj after plaintiff reported issues with memory since his stroke, including leaving the stove on, forgetting to bring his phone and wallet when leaving the house, and leaving things at the grocery store. *Id.* at 538-39. The doctor found that plaintiff had a Montreal Cognitive Assessment (MOCA) score within normal range. *Id.* at 541. The doctor suspected that lack of sleep, stress and anxiety were contributing to plaintiff's memory issues and forgetfulness while also noting that his stroke history could cause some mild cognitive impairment. *Id.*

On September 14, 2020, plaintiff continued to complain to Dr. Kriseman of memory concerns, word-finding difficulties, left-sided numbness, dizziness, and headaches. *Id.* at 593. The doctor also noted that plaintiff had normal gait. *Id.* Plaintiff continued to complain about headaches and lack of sleep to Dr. Kriseman on October 26, 2020. *Id.* at 592. On November 13, 2020, Dr.

United States District Court
Northern District of California

3

Kriseman noted that plaintiff has diplopia or double vision when going downstairs. *Id.* at 589-90. On December 3, 2020, Dr. Kriseman noted that plaintiff reported issues with spasms in his hands, balance, bending over, double vision, headaches, nausea, and memory loss. *Id.* at 581. On December 8, plaintiff saw Dr. Shapiro regarding chest pain and shortness of breath. *Id.* at 578. On December 17, 2020, Dr. Kriseman wrote that plaintiff's medication was causing drowsiness, diarrhea, and that he feels it causes him to process information more slowly. *Id.* at 576. At that exam, Dr. Kriseman noted that plaintiff scored a 23/30 on the MOCA test which was indicative of some cognitive impairment that may be due to medication and poor sleep. *Id.* at 576-77. Dr. Kriseman also observed decreased sensation to light touch in plaintiff's left arm and leg as well as fluctuating gait instability. *Id.* On December 28, 2020, plaintiff reported to his physical therapist the periodic use of a cane when he was dizzy or double vision when going up and down stairs. *Id.* at 570. He also reported nausea due to medication and a blood clot in his eye. *Id.*

On April 15, 2021, Dr. Courtney Murphy noted that Dr. Kriseman had referred plaintiff for a neurology evaluation on December 17, 2020. *Id.* at 561. The referral was closed after plaintiff failed to keep multiple appointments. *Id.*

On July 19, 2021, Dr. Zhu stated that plaintiff came to her medicine clinic to deal with lightheadedness he had had for the previous eight to nine months. *Id.* at 557. Plaintiff also reported to the doctor during the examination that when he turned his head to the left while laying down, he felt dizzy. *Id.* at 559. Dr. Zhu noted plaintiff's gait was normal and that he passed the Romberg balance tests. *Id.* Dr. Zhu opined that the dizziness may be due to low blood pressure or vertigo. *Id.* at 560.

On August 31, 2021, Dr. Zuckerman conducted a treadmill test due to plaintiff's complaints about daily chest tightening. *Id.* at 880. Plaintiff exercised for six minutes and forty seconds according to the Standard Bruce Protocol. *Id.* Results were unremarkable. *Id.*

Upon request from the California Department of Social Services, licensed clinical psychologist Dr. Aparna Dixit conducted an evaluation of plaintiff on September 13, 2021. *Id.* at 869. Dr. Dixit noted that plaintiff was unable to do serial 7s correctly and that he was in the low average range of the verbal comprehension index and the perceptional reasoning index. *Id.* at 870-

United States District Court
Northern District of California

71. His Working Memory Index fell within the borderline impaired range, and his Processing Speed Index fell within the low average range. *Id.* at 871. His Full Scale IQ of 79 fell within the low average range. *Id.* at 871. On the Wechsler Memory Scale ("WMS-IV"), plaintiff's scores showed moderately compromised auditory and visual working memory functioning and the "TMT" (trail making test) showed moderate impairment in executive functioning. *Id.*

Dr. Dixit opined that plaintiff was dealing with adjustment disorder with anxiety and mild to moderate cognitive disorder NOS. *Id.* Regarding work related ability, Dr. Dixit opined that plaintiff could carry out simple tasks and could interact with co-workers and supervisors with no difficulty. *Id.* at 872. However, Dr. Dixit believed that plaintiff's ability to remember and carry out complex tasks and tasks requiring flexibility was mild to moderately impaired, that plaintiff would have mild to moderate difficulty dealing with the public, and that plaintiff's ability to maintain the pace and persistence of work over two-hour increments was mild to moderately impaired. *Id.*

After a request from the state agency, Dr. Katzenberg, M.D. conducted an evaluation of plaintiff on December 16, 2021. *Id.* at 896. Dr. Katzenberg noted plaintiff's medical history including plaintiff's stroke while driving in 2018, eight ER visits due to recurrent mini-stroke symptoms, and frequent dizziness. *Id.* Regarding plaintiff's eye, Dr. Katzenberg noted right estropia or eye misalignment at rest and tracking issues with the right eye. *Id.* at 897. The doctor opined that plaintiff was "essentially" blind in the right eye and would preclude him from any job requiring depth perception. *Id.* Due to dizziness, Dr. Katzenberg recommended that plaintiff avoid ladders, unprotected heights, carrying over rough surfaces, and carrying no more than twenty to twenty-five pounds occasionally and ten to twenty pounds frequently. *Id.* He also noted that plaintiff was able to complete the gait, heel, toe, and tandem walk without difficulty. *Id.*

At some point in 2022, plaintiff began working for a limousine company, earning nearly $24,000 dollars that year. *Id.* at 20, 46-48, 405. Plaintiff testified that he worked as a contractor cleaning limousines for about six to eight months. *Id.* at 47-48. Before being hired, plaintiff disclosed his medical condition to the limousine companies. *Id.* at 47. They told him that they could "help him out" and they would only let him do "errands" and "nothing else." *Id.* Plaintiff claims his head problems worsened when he bent over, so his employer allowed him to wash and

vacuum cars standing up. *Id.* at 48. They also allowed him to go outside and get some fresh air when he was having trouble with his head. *Id.* He ultimately stopped working for them "because they found another guy who can do better than [him]." *Id.* at 48-49.

On May 4, 2022, as part of the disability determination, reviewing doctor Dr. Shih reviewed the evidence and opined that plaintiff would have limited near and far acuity, depth perception, and field of vision due to blindness in the right eye. *Id.* at 116-17.

Dr. Alice Ng conducted an optometry exam on March 3, 2023, and indicated that plaintiff had bilateral myopia, bilateral astigmatism, presbyopia, bilateral dry eye syndrome, and macular scarring in the right eye. *Id.* at 1636. With glasses, the doctor measured 20/80 vision in the right eye and 20/20 in the left eye. *Id.* at 1638.

### III.    ALJ Decision

On February 28, 2024, the ALJ issued a decision finding plaintiff disabled under the Social Security Act beginning February 22, 2023, but not before. *Id.* at 33. In determining plaintiff's disability status, the ALJ applied the five-step analysis in accordance with 20 C.F.R. § 404.1520(a). At step one, the ALJ found plaintiff had engaged in substantial gainful activity since plaintiff's alleged onset date. *Id.* at 20. Specifically, the ALJ found that plaintiff's self-employment in 2022 constituted substantial gainful activity because the claimant testified that he had worked over six months and work over six months is too long to be considered an unsuccessful work attempt. *Id.* At step two, the ALJ found plaintiff suffered severe impairments: status post ischemic stroke; non-epileptic seizures; central vein occlusion; obesity; and anxiety and adjustment disorder. *Id.* However, the ALJ declined to find plaintiff's alleged gout, sleep apnea, mild degenerative changes to the cervical spine, and sensorineural hearing loss to be severe. *Id.* At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. The ALJ specifically considered Listings: 2.02-2.04 (Loss of central visual acuity; Contraction of the visual field in the better eye; Loss of visual efficiency, or visual impairment, in the better eye); 11.04 (vascular insult

United States District Court
Northern District of California

to the brain); 12.04 (Depressive, bipolar and related disorders); 12.06 (Anxiety and obsessive-compulsive disorders); and 12.07 (Somatic symptom and related disorders). *Id.* at 21-23.

The ALJ determined that since November 18, 2018, plaintiff had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) except he could "never have exposure to hazards such as unprotected heights, heavy machinery, or commercial driving; can never climb ladders, ropes, and scaffolds; can perform no more than simple, repetitive, and routine tasks; can read print no smaller than a 12-point font; and can only handle large objects." *Id.* at 23.

At step four, the ALJ found plaintiff could not perform his past relevant work as a limo driver. *Id.* at 31. Before moving on to step five, the ALJ found that on February 22, 2023, plaintiff's age category changed to an individual of advanced age as defined by 20 C.F.R. § 404.1563. *Id.*

At step five, after considering plaintiff's age, education, and RFC, and taking into account the hearing testimony of the vocational expert, the ALJ found that prior to February 22, 2023, the date plaintiff's age category changed, jobs existed in significant numbers in the national economy that plaintiff could have performed, including an office helper, marker, and garment sorter. *Id.* at 31-32. The ALJ further found that beginning on February 22, 2023, the date plaintiff's age category changed, no jobs exist in significant numbers in the national economy that plaintiff could perform. *Id.* at 32. Accordingly, the ALJ concluded plaintiff was not disabled under the Social Security Act prior to February 22, 2023, but became disabled on that date and has continued to be disabled since then. *Id*. at 33.

## LEGAL STANDARDS

### I.    Standard of Review

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.* Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of

fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**II.　　Finding of Disability**

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[,]" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then

United States District Court
Northern District of California

the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(i). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

**DISCUSSION**

Plaintiff moves for summary judgment, contending that the ALJ erred (1) in finding plaintiff engaged in substantial gainful activity at step one, (2) in evaluating the medical opinions, (3) in evaluating plaintiff's symptom testimony, and (4) in asking incomplete hypothetical questions to the vocational expert. Defendant cross-moves for summary judgment, contending the ALJ properly weighed the evidence and properly determined that plaintiff engaged in substantial gainful activity. Defendant contends substantial evidence supports the ALJ's decision.

## I.    Substantial Gainful Activity

Plaintiff argues that his work cleaning limousines in 2022 does not constitute substantial gainful activity and instead qualifies as an "unsuccessful work attempt." Pl.'s Mot. at 11-12. Plaintiff further contends that the ALJ had insufficient evidence to determine that plaintiff's work lasted for longer than six months. *Id.* at 12. Defendant argues that it was permissible for the ALJ to find substantial gainful activity based on plaintiff's testimony that he worked "for maybe more than like half a year or maybe eight months" in 2022. Dkt. No. 12 ("Def.'s Mot.") at 3; *see also* AR 47-48 (hearing testimony).

At the first step of the disability inquiry, the ALJ must determine whether the claimant is engaged in substantial gainful activity ("SGA"). Someone is engaged in substantial gainful activity when engaged in "work activity that involves doing significant physical or mental activities" and the work activity is done for "pay or profit." 20 C.F.R. § 404.1572(a)-(b). When looking at whether work is substantially gainful, earnings are the "primary consideration." *Id.* § 404.1574(a)(1).[3] Although "there is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines[,]" this presumption can be rebutted. *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). "Factors to be considered in addition to the amount earned include the

---

[3] Plaintiff's testimony at the hearing indicates that he may have engaged in self-employment, which would be governed by 20 C.F.R. § 404.1575. *See* AR 47. However, both parties cite to Section 404.1574, *see* Pl.'s Mot. at 11, Def.'s Mot. at 3, and the outcome would be the same regardless. Thus, the Court's analysis will focus on Section 404.1574.

time spent working, quality of a person's performance, special working conditions, and the possibility of self-employment." *Katz v. Sec'y of Health & Hum. Servs.*, 972 F.2d 290 (9th Cir. 1992) (citing *Keyes*, 894 F.2d at 1056; 20 C.F.R. §§ 404.1573–404.1576). Further, work done by a claimant will not be considered substantial gainful activity if, after six months or less, their "impairment forced [plaintiff] to stop working or to reduce the amount of work [they] do so that [plaintiff's] earnings from such work fall below the substantial gainful activity earnings level." 20 C.F.R. § 404.1574(c)(1).

The Court agrees with plaintiff that the ALJ had insufficient evidence to find that plaintiff did not engage in an unsuccessful work attempt. Here, the ALJ relied solely on plaintiff's hearing testimony that he worked "for maybe more than like half a year or maybe eight months" to establish that plaintiff worked longer than the unsuccessful work attempt threshold of six months. *See* AR 20, 47-48. One of the disabilities plaintiff claims relates to memory problems. *Id.* at 58. Plaintiff repeatedly sought medical care for concerns regarding his memory post-stroke. *See* AR 538-39 (November 2019 evaluation), 593 (September 2020 doctor's visit), 581 (December 2020 doctor's visit). He reported multiple instances of going out to the store and leaving his wife or daughter there because he forgot they were with him. *Id.* at 593. At the hearing, when asked how long he worked as a cleaner for the limo company in 2022, plaintiff responded, "maybe more than like half a year or maybe eight months." *Id.* at 48. The ALJ asked no follow-up questions. In light of plaintiff's documented memory problems, his ambiguous testimony at the hearing does not constitute substantial evidence that plaintiff worked for more than six months. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d at 1110. Further, although plaintiff's earnings of nearly $24,000 "establishe[d] a presumption that he is engaged in SGA[,]" this does not "relieve an ALJ of the duty to develop the record fully and fairly." *See Corrao v. Shalala*, 20 F.3d 943, 948 (9th Cir. 1994) (quoting *Dotson v. Shalala*, 1 F.3d 571, 576 (7th Cir. 1993)) (citations omitted).

In short, the Court finds that the ALJ did not develop the record sufficiently to determine whether plaintiff had engaged in substantial gainful activity during the relevant period. Because the

United States District Court
Northern District of California

11

United States District Court
Northern District of California

Court is unable to say that this finding did not impact the ALJ's ultimate conclusion that plaintiff was not disabled prior to February 23, 2023, this error was not harmless.

Additionally, although the issue was not raised by either party, there was evidence in the record that plaintiff's cleaning work may have occurred with "special work conditions" under 20 C.F.R. § 404.1573(c). If work is done under "special work conditions" it may show that a plaintiff does not have the ability "to do substantial gainful activity." 20 C.F.R. § 404.1573(c). Examples of special work conditions include when an individual is "allowed to work irregular hours or to take frequent rest periods" or is "permitted to work at a lower standard of productivity or efficiency than other employees." *Id.*

Here, when plaintiff discussed his employment at the hearing, he relayed that he disclosed his medical condition to the limousine company. AR 47. They told him, "okay, we can help you out on this one but the thing is that just like, you're just going to do some errands with us and nothing else." *Id.* Since plaintiff's head problems worsened when he bent over, his employer allowed him to wash and vacuum cars standing up. *Id.* at 48. They also allowed him to go outside and get some fresh air when he was having trouble with his head. *Id.* They let plaintiff go "because they found another guy who can do better than me." *Id.* Some of the drivers were dissatisfied with the cleaning because plaintiffs eye problems meant "I can't see the whole thing." *Id.* at 48-49. Ultimately, the company said, "We can try you out for how many weeks and then it turns into months and then it turns into months and then at that time, they said, we have to let you go because we really, we try out [sic] best . . . ." *Id.* at 47. On this record, the ALJ should have inquired into or discussed whether plaintiff's employer "helping him out" constituted "special work conditions." *See* 20 C.F.R. § 404.1573(c).

## II. Plaintiff's Symptom Testimony

Plaintiff also argues the ALJ erred in assessing his symptom testimony. In particular, plaintiff argues the ALJ did not consider his testimony indicating dizziness and difficulty bending, poor memory, bad eyesight, and inability to do chores. Pl.'s Mot. at 18-19.

An ALJ's analysis of a claimant's subjective pain or symptoms is governed by a two-step process. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. at 1036 (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks omitted). This clear and convincing standard "is not an easy requirement to meet" and is "the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

Plaintiff testified at the hearing about his health conditions which he believed prevented him from working. AR 47-65. He testified that he was "having problem[s] with" his head, especially when bending. *Id.* at 47-48. Plaintiff also claimed he was dealing with "mini strokes." *Id.* at 49-50. He claimed he had issues with memory. *Id.* at 58. He testified his neurologist restricted him from driving at night and he required glasses. *Id.* at 52. Plaintiff claimed he has double vision in his right eye. *Id.* at 60. He claimed he has depression, and his medication makes him lightheaded, causing him to throw up. *Id.* at 52-53. He testified he had a gout flare that caused him to go to "the ER about three months" prior to the hearing. *Id.* at 57. After being asked by the ALJ about his hobbies, plaintiff disclosed he doesn't ever visit with other people, "can't even last five seconds [looking at his] phone" due to the brightness and the blurriness, doesn't read, and watches limited television due to "problem with [his] eyes." *Id.* at 58, 60. Regarding household chores, plaintiff testified he doesn't go grocery shopping, he doesn't cook, he doesn't vacuum, he doesn't do laundry, and he could only lift at most a gallon of water. *Id.* at 58, 61-62. Plaintiff claimed he would have trouble telling the difference between salt and pepper shakers at the dinner table, he needs to be careful when taking a bath, and he has to take a break every few minutes when walking due to dizziness. *Id.* at 59, 61.

In her analysis, the ALJ recognized that plaintiff's medically "determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 25. At step two of the symptom

testimony inquiry, the ALJ rejected plaintiff's testimony, arguing that his claimed dizziness and issues with balance did not comport with the medical history. *Id.* The ALJ looked at discrete balance tests and doctors' notes stating that plaintiff's gait was normal. *Id.*; *see id.* at 559, 593, 665, 897. The ALJ also rejected testimony regarding plaintiff's mental status, noting that plaintiff missed multiple neurology appointments. *Id.* at 25. Regarding eyesight, the ALJ did not credit the extent of plaintiff's claimed vision problems, assigning an RFC that limited plaintiff to handling only large objects and reading no smaller than twelve-point font. *Id.* at 26. The ALJ cited eye examinations and accepted some doctors' opinions while rejecting others. *Id.* at 26, 29. The ALJ also implicitly rejected plaintiff's testimony regarding his daily activities by repeatedly stating that plaintiff could wash laundry, take the trash out, could shop, and could watch television. *Id.* at 22, 23, 28.

First, regarding plaintiff's testimony about dizziness and balance, the ALJ's claim that plaintiff's testimony was not consistent with the medical record is not clear and convincing. Plaintiff specifically testified that his issues worsen over a few minutes when he has to stand and walk for an extended period of time. *Id.* at 61. At most the medical reports show that plaintiff can walk on a treadmill for six minutes and forty seconds without the doctor noting any issues. *Id.* at 880. But this does not translate to plaintiff being able to maintain a productive schedule during a full workday.

Moreover, the ALJ's reliance on missed neurology appointments to reject claims of dizziness and double vision was improper. The ALJ must "consider[] possible reasons [plaintiff] may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." SSR 16-3p, *available at* 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017).[4] The ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations

---

[4] Social Security Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). They "reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Id.* (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)).

United States District Court
Northern District of California

omitted). At minimum, the ALJ should have inquired into the lack of treatment before using this to reject plaintiff's testimony.

The ALJ's rejection of plaintiff's testimony regarding his eyesight was similarly not clear and convincing. First, the ALJ did not acknowledge plaintiff's claimed visual sensitivity to light. *See id.* at 60. Next, there was evidence in the record from Drs. Katzenberg and Shih supporting plaintiff's testimony that he was essentially blind in his right eye. *Id.* at 897, 105. Confusingly, the ALJ cited Dr. Katzenberg's report as evidence to discredit plaintiff's right-eye blindness. *See* AR 26 (citing Ex. B7F). The ALJ also cited to various treatment notes: a January 2019 examination showing 20/200 vision in the right eye but 20/25 vision in the left, treatment notes from July 2023 that "only noted a 'lazy' right eye[,]" and an eye examination from March 2023. *Id.* However, the January 2019 visit was a routine health check-up, the purpose of which was not to evaluate plaintiff's vision, and the "lazy" eye comment appears to be a passing note in a much more lengthy physical work-up. *See id.* at 1726-35. The Court finds that two discrete vision tests done four years apart are not sufficiently clear and convincing evidence to reject plaintiff's testimony regarding his right-eye blindness, particularly where the testimony is supported by the findings of two doctors.

Finally, the ALJ improperly rejected plaintiff's testimony about his leisure time and the chores he can perform. The ALJ's decision cited, no fewer than three times, the following account taken from the September 2021 psychological evaluation by Dr. Dixit: that plaintiff could do laundry, take the trash out, and go shopping and that he watched TV in his leisure time. *Id.* at 22 (citing Ex. B5F); *see also id.* at 870. This account conflicts with what plaintiff testified to at the hearing. At the hearing, plaintiff testified that he doesn't do grocery shopping, doesn't cook, doesn't do laundry, and doesn't take out the trash. *Id.* at 58, 61. He testified that his ability to watch television is "like very limited" due to problems with his eyes and that "[i]t really bothers me" when he watches TV. *Id.* at 58, 62-63. While he recently had his driver's license renewed, he testified that his neurologist restricted him from driving at night. *Id.* at 51-52. It was incumbent upon the ALJ to resolve this conflict regarding plaintiff's daily activities before using it as a reason to reject the plaintiff's symptom testimony; without this, the ALJ's reasoning for rejecting the testimony was not clear and convincing.

15

In sum, for the reasons stated above, the Court finds the ALJ's rejection of plaintiff's symptom testimony did not comport with the "demanding" standard required in the Ninth Circuit. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

### III.    Other Issues

Plaintiff contends the ALJ erred in evaluating the persuasiveness of the medical opinions of Dr. Katzenberg, Dr. Dixit, and Dr. Shih. He also takes issue with the ALJ's determination of the disability onset date and the hypotheticals posed to the vocational expert. The Court finds the errors in addressing plaintiff's ability to engage in substantial gainful activity and the improper rejection of plaintiff's symptom testimony could have impacted the ALJ's assessment and weight given to the medical opinions, which in turn impacted the RFC assessment and subsequent steps of the disability inquiry. For example, when the ALJ determined plaintiff's RFC, the ALJ cited plaintiff's work at "substantially gainful levels" in 2022 as a reason to find a higher RFC level. AR 28. Accordingly, the Court need not reach the questions regarding the medical opinions, disability onset date, and the hypotheticals posed to the vocational expert but instead will remand the matter for further administrative proceedings.[5]

Plaintiff asks the Court remand this case for an immediate award of benefits. However, remand for award of benefits is appropriate only where "there are no outstanding issues on which further proceedings in the administrative court would be useful." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Here, further proceedings would be useful to develop the record regarding the extent of plaintiff's work in 2022, on the question of why plaintiff did not follow up on his neurological treatment, and on plaintiff's vision and depth perception. *See Trevizo*, 871 F.3d at 682 ("The decision whether to remand a case for additional evidence, or simply award benefits[,] is within the discretion of the court.") (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

---

[5] Nevertheless, the Court expresses concern about the ALJ's unsupported rejection of Dr. Katzenberg's statement that plaintiff's vision problems would affect depth perception. *See* AR 29. "[T]he ALJ may not substitute her opinion for that of [a] medical doctor." *Walston v. Astrue*, No. 11-cv-145-JPH, 2012 WL 5258784, at *7 (E.D. Wash. Oct. 24, 2012) (collecting cases).

United States District Court
Northern District of California

As stated above, the Court finds the ALJ committed harmful error in failing to develop the record regarding plaintiff's work history and in evaluating plaintiff's symptom testimony. Those errors could have impacted the weighing of the medical opinions, including those of Drs. Katzenberg, Dixit, and Shih, and they almost certainly had an impact on the assignment of the RFC.

Accordingly, the Court remands this case for further development of the record as described above and for any other development of the record that would be useful for a new decision.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED IN PART, as the Court did not reach all of the arguments in his motion. Defendant's motion for summary judgment is DENIED. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: February 13, 2026

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

17